FILED

December 11, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:37 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| WENDY EMORY, | ) | **Docket No: 2017-05-0082** |
| Employee, | ) | |
| v. | ) | |
| EPIC GROUP, LP, | ) | **State File Number: 71788-2016** |
| Employer, | ) | |
| And | ) | |
| AMERISURE INS., | ) | **Judge Dale Tipps** |
| Insurance Carrier. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This matter came before the Court on November 28, 2017, for an Expedited Hearing. The present focus of this case is whether Ms. Emory is entitled to medical and temporary disability benefits for her low back injury.[1] For the reasons set forth below, the Court holds Ms. Emory is entitled to medical treatment and temporary disability benefits.

### History of Claim

Ms. Emory worked as a certified nursing assistant at an Epic Group nursing home when she injured her back assisting a patient on August 29, 2016. She reported the injury to her supervisors, who sent her to Fast Pace medical clinic the next day.

Ms. Emory saw Christina Adams, a nurse practitioner, at Fast Pace and reported severe pain in her lower back and buttocks. NP Adams diagnosed low back pain/strain and returned Ms. Emory to work with restrictions, including limited lifting and bending. Although providers at Fast Pace modified Ms. Emory's restrictions on occasion, they kept her on some form of light duty through her last visit on October 10. On that date,

---

[1] Epic did not challenge the compensability of Ms. Emory's injury at the Expedited Hearing, and compensability was not a disputed issue in the DCN.

1

NP April Caperton referred Ms. Emory to an orthopedic specialist.

Ms. Emory continued to work while she was under light duty restrictions, but she testified Epic regularly required her to perform work that exceeded the restrictions. The affidavit of Debbie Mashburn, Ms. Emory's supervisor, corroborates this testimony.

Epic provided an orthopedic panel, but it only included the names of Dr. William Fontenot and NP Erica Hensley, who practice together at Seven Springs Orthopaedics & Sports Medicine. Ms. Emory agreed to go to Seven Springs, where she saw Ms. Hensley on October 18. Ms. Hensley assessed lumbago, lumbar spasm, and lumbar radiculopathy. She refilled Ms. Emory's Lortab prescription, ordered an MRI, and noted that "she will remain on light duty with lifting restrictions."

Ms. Emory returned the next week and NP Hensley noted the MRI results in part as, "L5-S1 some chronic disc desiccation, fairly well preserved interspace height, mild to moderate central disc bulging but the neural foramina are only slightly compromised." She added lumbar degenerative disc disease to the assessment and continued the light duty restrictions until Ms. Emory's return appointment in four weeks.

Ms. Emory returned in less than two weeks, reporting uncontrolled pain. NP Hensley added "discogenic pain" to the assessment, recommended therapy, and ordered a back brace. She continued to see Ms. Emory every week or two until December 21, when Ms. Emory reported worsened pain caused by lifting and tugging patients. NP Henlsey noted, "She has agreed to let me take her off work for the next week."

Upon Ms. Emory's return approximately two weeks later, she reported that two epidural injections had not improved her condition. Because of this and insufficient pain relief from NP Hensley's prescriptions, Ms. Emory asked NP Hensley about a second opinion. NP Hensley told Ms. Emory she was welcome to get another opinion but also ordered an EMG and continued therapy. Ms. Emory "requested to be off work for the next five days" because she could not work without the pain medicines, and NP Hensley provided a note to that effect.

Ms. Emory last received treatment at Seven Springs on January 12, when she requested time off from work "as they have not kept her on light duty as prescribed." NP Hensley took her off work for two weeks pending completion of the EMG. An additional Return to Work note dated January 24, 2017, indicates Ms. Emory was medically unable to work until February 10.

Epic paid Ms. Emory no temporary total disability (TTD) benefits after the providers at Seven Springs took her off work. She filed a Petition for Benefit Determination (PBD) on January 26 seeking temporary disability benefits and a valid panel of orthopedists.

2

During this time, Ms. Emory continued her regular, recurring appointments with her primary care provider, Express Med, for treatment of a number of unrelated medical problems. During one of these appointments on February 8, she reported pain in her low back, right hip, and leg. She told NP Meredith Hutton that none of her treatment to date had helped and that "she has been dismissed from [Seven Springs]." When she returned to Express Med a few days later, NP Melanie Stone noted back pain, back spasm, and lumbar radiculopathy. Because of a bulging disc at L5-S1, she referred Ms. Emory to a neurosurgeon. Ms. Emory testified that Express Meds has continued to provide prescriptions to manage her pain.[2]

Epic subsequently provided a panel of orthopedic surgeons, and Ms. Emory selected Dr. Jeffrey Adams on March 13, although her appointment was not set until April 20. When she arrived for that appointment, Dr. Adams' office informed her he did not treat back injuries. Ms. Emory then agreed to see Dr. Douglas Wilburn, but she did not see him until June 15.

Dr. Wilburn examined Ms. Emory and assessed a work injury followed by chronic back and right leg pain. He stated, "I have no x-rays or reports to adequately review her injury." He felt further evaluation was necessary, and he wanted to review her MRI and EMG results. Dr. Wilburn noted that Ms. Emory had been off work since January but said, "I am not going to address her work status until I have a chance to review her imaging studies." He recommended additional physical therapy and offered to see her again and review her imaging studies.

Dr. Wilburn sent a letter to Epic's attorney in August confirming that he had received and reviewed Ms. Emory's prior studies. He diagnosed:

> 1) Work injury on 8/29/2016. 2) Chronic back and right leg pain without any clear cut neurological deficit or identifiable radiculopathy on either an MRI or EMG/NCS. 3) Discogenic low back pain with an overlying strain causing predominantly low back and right hip pain and with some non-verifiable radicular pain in the right leg.

Dr. Wilburn recommended Ms. Emory resume "aggressive conservative treatment," including physical therapy and possibly a functional capacity evaluation. He also confirmed that Ms. Emory's work accident "did contribute more than 51% to causing her

---

[2] Ms. Emory offered an unsigned "to whom it may concern" letter, purportedly taking Ms. Emory off work until she received a neurosurgical examination. The Court upheld Epic's objection and excluded this letter as hearsay. Specifically, the Court found that the typed name of NP Hutton on the document, without some indication of an intent to create an electronic signature, was insufficient to qualify as a hearsay exception under Rule 0800-02-21-.16(6)(b) of the Tennessee Compilation Rules and Regulations. The Court also found that the letter was not a medical record contemplated by the Rule.

3

injury and her current diagnosis." He did not think it was appropriate for him to address or dispute the work restrictions assigned by Ms. Emory's prior providers.[3]

Ms. Emory requested that the Court award TTD benefits, plus the statutory penalty, from December 21, 2016, through the present. She also sought an order compelling Epic to provide a return visit and continuing treatment with Dr. Wilburn, as well as mileage for her travel to medical appointments. Ms. Emory also requested an award of attorney fees.

Epic countered that Ms. Emory is not entitled to TTD benefits for the period after she stopped treating at Seven Springs. It asserted she provided no admissible medical proof of total disability during that time and pointed to the fact that Dr. Wilburn failed to address her work status. Regarding the period when the providers at Seven Springs took Ms. Emory off work, Epic contended that the Court should disregard those medical opinions as they were based on Ms. Emory's false statements that Epic required her to work outside of her light duty restrictions. As to Ms. Emory's request for medical treatment with Dr. Wilburn, Epic's attorney stated that Ms. Emory had not requested a return appointment, Epic was not denying any medical treatment, and Ms. Emory was welcome to return to Dr. Wilburn at any time.

The parties stipulated that Ms. Emory's compensation rate is $209.18.

**Findings of Fact and Conclusions of Law**

Ms. Emory need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Temporary Disability Benefits*

Ms. Emory seeks payment of TTD benefits.[4] An injured worker is eligible for TTD benefits if: (1) the worker's disability arose due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*,

---

[3] Dr. Wilburn gave a deposition in this matter, but since his testimony was consistent with his treatment note and his letter, the Court will not summarize it in detail. However, he did testify generally that the work restrictions given by Ms. Emory's other providers were reasonable.

[4] The parties acknowledged during the hearing that, in spite of the dispute over whether Ms. Emory exceeded her light duty restrictions, she worked for Epic while under those restrictions and was not entitled to temporary partial disability benefits.

4

TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Ms. Emory presented unrebutted and unambiguous proof of a period of disability causally connected to her work injury. This proof took the form of medical instructions from Seven Springs taking her completely off work. Epic offered no explanation or any proof as to why it did not pay TTD benefits while Ms. Emory was off work. Its argument as to why it should not now be required to pay those benefits is far from persuasive.

First, Ms. Emory's testimony and her supervisor's affidavit constitute unrebutted proof that Epic required Ms. Emory to exceed her light duty restrictions. Epic's attempt to characterize Ms. Emory's non-compliant work activities as voluntary is completely unsupported by any evidence. Thus, Epic has not shown that the providers at Seven Springs based their work restrictions on inaccurate information. Further, even if Epic proved it had complied with the light duty restrictions, this would not necessarily mean the medical providers would not have taken Ms. Emory off work. The Court cannot substitute its judgment for that of the medical professionals. *See Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8-9 (August 18, 2015). For these reasons, the Court finds Ms. Emory is likely to prove entitlement to TTD benefits from December 21, 2016, through February 10, 2017, at a hearing on the merits.

Regarding TTD for other periods claimed by Ms. Emory, Dr. Wilburn, whom both parties acknowledged as the authorized treating physician (ATP), has not yet offered an opinion regarding Ms. Emory's ability to work following the expiration of the Seven Springs restrictions. If he does so, Ms. Emory may be entitled to additional disability benefits. However, in the absence of medical proof of disability, the Court cannot find at this time that Ms. Emory has proven she is likely to succeed at a hearing on the merits that she is entitled to TTD benefits from February 11 through the present.

*Medical Benefits*

The Court now addresses Ms. Emory's request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A). Employers are also required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i).

The parties agreed that Dr. Wilburn is Ms. Emory's ATP. Epic must therefore provide Ms. Emory with a return appointment to Dr. Wilburn, as well as any treatment he deems reasonably necessary because of her work accident.

Ms. Emory also requested mileage reimbursement. She may well be entitled to mileage under Tennessee Code Annotated section 50-6-204(a)(6)(a), which provides for

reimbursement of reasonable travel expenses incurred when an employee must travel more than fifteen miles for authorized medical treatment. However, because Ms. Emory did not submit any proof of her actual mileage, the Court cannot award a specific amount at this time.

Epic argued during the hearing that Ms. Emory never filed a PBD for mileage reimbursement or a return to Dr. Wilburn. To the extent Epic may have intended to suggest the Court has no jurisdiction to address these issues at this time, such a suggestion would be incorrect. The DCN in this case clearly identified "Medical Benefits" as one of the disputed issues to be resolved, and both mileage and continuing treatment with Dr. Wilburn are included in that category. If Epic made this argument in an attempt to excuse its failure to schedule a return to Dr. Wilburn, it is equally unpersuasive. Dr. Wilburn recommended in both his treatment note and his letter to Epic's attorney that Ms. Emory should resume conservative treatment. Once Epic was aware of that recommendation, it should have been unnecessary for Ms. Emory to file a PBD or even request additional treatment before Epic provided the recommended physical therapy or a return to Dr. Wilburn.

Similarly, Epic introduced medical records and elicited testimony from Ms. Emory regarding missed therapy appointments and questions about her use of narcotic prescriptions while treating with Seven Springs. Again, however, Epic never argued or produced any proof that these issues were related in any way to its failure to provide statutorily-required benefits. In light of the fact that compensability was not a disputed issue, as well as Epic's agreement that Dr. Wilburn remains Ms. Emory's ATP, the insinuations about Ms. Emory's narcotic use are as irrelevant as they are unseemly.

*Penalties*

Ms. Emory also seeks an order imposing a penalty pursuant to Tennessee Code Annotated section 50-6-205(b)(3), which provides:

> In addition to any other penalty provided by law, if an employer, trust or pool or an employer's insurer fails to pay, or untimely pays, temporary disability benefits within twenty (20) days after the employer has knowledge of any disability that would qualify for benefits under this chapter, a workers' compensation judge shall have the authority to assess against the employer, trust or pool or the employer's insurer a civil penalty in addition to the temporary disability benefits that are due to the employee. The penalty, if assessed, shall be in an amount equal to twenty-five percent (25%) of the temporary disability benefits that were not paid in accordance with this subsection (b). Furthermore, the penalty may be assessed as to all temporary disability benefits that are determined not to be paid in compliance with this subsection (b).

6

That Epic had knowledge of Ms. Emory's disability is clear and undisputed. In spite of this knowledge, Epic not only failed to pay temporary disability benefits within twenty days of receiving information, it also continued to deny payment of those benefits without any legal justification for almost a year. The Court has already determined that Ms. Emory appears likely to establish entitlement to TTD benefits, and Epic must pay those benefits under this Order. As a result, Ms. Emory has, in fact, "qualif[ied] for benefits under this chapter," as required by Section 50-6-205(b)(3). The Court therefore assesses a penalty against Epic in the amount of twenty-five percent of the TTD benefits due to Ms. Emory for the period of December 21, 2016, through February 10, 2017.

In addition to its failure to provide TTD benefits, Epic initially failed to provide Ms. Emory a panel of physicians. Instead, it simply sent her to Fast Pace, where she treated for several weeks. When Fast Pace referred Ms. Emory for orthopedic treatment, Epic gave her the option of choosing between two providers, Dr. Fontenot and his nurse practitioner. This did not constitute a valid panel under Section 50-6-204(a)(3)(A)(i), which requires that a panel must include "a group of three (3) or more independent reputable physicians." Thus, Epic failed to provide a panel of physicians to Ms. Emory for at least six months after her injury. It then compounded the delay another two months by including a physician on the panel who does not treat back injuries.

Tennessee Compilation Rules and Regulations 0800-02-01-.25(1) provides:

[U]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer *shall immediately provide the injured employee a panel of physicians[.]* . . . In any case where the employer fails to provide a panel of physicians to the employee within a reasonable amount of time, but in no instance longer than five (5) business days from the date the  employer  has notice of an   injury . . . the employer may be assessed a civil  penalty,    not to exceed five thousand dollars ($5,000).

Likewise, Tennessee Code Annotated section 50-6-118(12) provides that the Penalty Unit may collect a penalty for the "failure of an employer to timely provide a panel of physicians that meets the statutory requirements [of the law]."

Epic's actions contravened both rule and statute. Accordingly, the Court refers the case to the Penalty Unit for its consideration of the assessment of a penalty for Epic's failure to timely provide Ms. Emory a panel of physicians.

*Attorney Fees*

Ms. Emory seeks fees pursuant to Tennessee Code Annotated section 50-6-

226(d)(1)(B), which provides:

> In addition to attorneys' fees provided for in this section, the court of workers' compensation claims may award reasonable attorneys' fees and reasonable costs, including reasonable and necessary court reporter expenses and expert witness fees, for depositions and trials incurred when the employer:

> Wrongfully denies a claim by filing a timely notice of denial, or fails to timely initiate any of the benefits to which the employee is entitled under this chapter, including medical benefits under § 50-6-204 or temporary or permanent disability benefits under § 50-6-207, if the workers' compensation judge makes a finding that such benefits were owed at an expedited hearing or compensation hearing.

The Appeals Board held that this provision does not require determination of fee requests "at an interlocutory stage of the case" but suggested such a determination might be appropriate in some cases. It noted that "each case must be evaluated based on the particular circumstances presented," although it did not elaborate as to what circumstances should be considered. *See Andrews v. Yates Services, LLC*, 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at *7-8 (May 23, 2017).

Mindful of "the twists and turns inherent in litigation" described in *Andrews*, the Court notes that the salient facts of this case will not change. Epic acknowledged Ms. Emory suffered a compensable injury but provided no temporary disability benefits and inadequate medical panels. The medical panel issue was not resolved until Ms. Emory retained counsel and filed the PBD. Epic denied TTD benefits without explanation or any indication it would have ever paid them voluntarily. As Ms. Emory's counsel argued during the hearing, Epic showed a blatant disregard of the basic provisions of the Workers' Compensation Law, which forced her attorneys to expend significant time and effort to get benefits for someone who has received no wages or disability benefits for almost a year. These appear to be the precise circumstances described by the statute – Epic "fail[ed] to timely initiate any of the benefits to which the employee is entitled under this chapter, including medical benefits under § 50-6-204 or temporary or permanent disability benefits" and this Court has made "a finding that such benefits were owed at an expedited hearing."

Based on these facts, the Court sees no value in delaying an award of attorney fees.[5] Further, it agrees with Ms. Emory that a general refusal to award interlocutory fees might discourage attorney involvement in "small value" cases where an employee's

---

[5] The Court also notes that, unlike this case, the trial court in *Andrews* determined that the employee was *not* entitled to attorney fees. That may have been a factor in the Board's conclusion that it was premature to address the claim for attorney fees at that stage of the case.

permanent disability benefits would be so small as to make representation financially unfeasible. If the purpose of Section 226(d)(1)(B) was to encourage attorneys to accept more workers' compensation cases and thus provide more representation for injured employees, that purpose might be frustrated if attorneys are forced to wait until the conclusion of a case before requesting and receiving these additional fees.

Based on these considerations, the Court finds that an award of attorney fees is appropriate at this stage of this case.

**IT IS, THEREFORE, ORDERED** as follows:

1. Epic shall continue to provide Ms. Emory with medical treatment made reasonably necessary by her August 29, 2016 injury in accordance with Tennessee Code Annotated section 50-6-204. Dr. Wilburn shall continue to be the authorized treating physician.

2. Epic shall pay Ms. Emory temporary total disability benefits in the amount of $1,553.91 for the period of December 21, 2016, through February 10, 2017.

3. Epic shall pay Ms. Emory an additional twenty-five percent penalty in the amount of $388.48.

4. Ms. Emory's requests for mileage benefits are denied at this time.

5. The amount of Ms. Emory's attorney fee shall be determined at a later date. Ms. Emory's counsel shall submit a fee request, affidavit, and any supporting documentation on or before December 22, 2017. Epic shall submit any response on or before January 12, 2018.

6. This matter is set for a Scheduling Hearing on February 14, 2018, at 9:00 a.m. The parties must call 615-741-2112 or toll free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without the parties' participation. All conferences are set using Central Time (CT).

7. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

9

8. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED this the 11th day of December, 2017.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Affidavit of Wendy Emory
2. Affidavit of Debbie Mashburn
3. Form C-42 Choice of Physicians
4. Deposition transcript of Dr. Douglas Wilburn
5. Records from Seven Springs Orthopaedics
6. Records from Express Meds
7. Express Med off-work note (Identification Only)
8. Records from Advanced Neurology Associates
9. Treatment note and letter from Dr. Wilburn
10. Records from Fast Pace Medical Clinic
11. Contract of Employment
12. Discharge Summary from Star Physical Therapy
13. Hospitality Aide Job Description (Identification Only)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Parties' Pre-Hearing Statements

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 11th day of December, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Cameron Hoffmeyer Employee's Attorney | | | X | choffmeyer@bhsdlaw.com |
| Allen Grant Employer's Attorney | | | X | agrant@eraclides.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11